582

## SWIGART, Plaintiff-Appellant, v. SWIGART, Defendant-Appellee.

Ohio Appeals, Second District, Montgomery County.

No. 2209.    Decided January 3, 1953.

Scharrer, Scharrer & Hanaghan, Dayton, for plaintiff-appellant.

Baggott & Johnston, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, PJ:

This is a law appeal from an order of the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations sustaining a motion of the defendant to change the custody of Georgia Lou Swigart, aged seven years, a child of the parties, from the mother to the father.

The plaintiff, the mother, had been granted a decree of divorce from the defendant, the father, for his aggression and the custody of the child awarded to the plaintiff. This decree was entered in November, 1946. Thereafter in 1948, a motion of the defendant to change the custody of the child from the mother to the father was denied. The motion upon which the order here under consideration was made was of date March 7, 1952, hearing had on April 21, 1952 and order entered on July 15, 1952.

On February 25, 1952, a Miss Irene Puncsak, a case worker for the Trumbull County Child Welfare Board, took the child from the home of its mother and it was placed in the Trumbull County Childrens' Home and was in the custody of the home at all times from that date until the trial on the motion to change custody.

At the hearing on the motion to modify the custodial order, Miss Puncsak, the welfare worker, testified at length. The defendant's other witnesses were himself, his mother, and two others who were interrogated only as to the reputation of the defendant and as to conditions in his home. Defendant also offered an affidavit of Merlin H. Gander, defendant's Exhibit A, which stated that he was employed as Attendance Officer in the Warren County School System. The affidavit set out certain information purporting to have been taken from the attendance records of the Market Street School in the City of Warren, disclosing the number of days in 1950-1951 and up to January 18, 1952 that the child was absent from school. Also a certificate, defendant's Exhibit B, made by the Clerk of the Municipal Court of Warren, Ohio, signed by the Clerk by a Deputy Clerk. The certificate set forth a charge of drunk and disorderly against the plaintiff of date March 24, 1951 and a plea of guilty and a fine; a charge against the plaintiff of being a suspicious person, a plea of not guilty, a finding of guilty, fine, costs and 10 days, days suspended on

good behavior. This of date March 30, 1951, and a third notation of an action against Francis Brackett, who was the husband of plaintiff. The charge "creating a disturbance," a plea of not guilty, a finding of guilty, a sentence of $10.00 and costs and 10 days, days suspended on good behavior. This of date March 14, 1952.

By way of defense to the motion, plaintiff, her married daughter, her landlord and landlady and a number of her immediate neighbors testified in her favor on the substantive question of her fitness to continue to have the custody of her child, the general condition of her home, her habits, the care that had been given the child, the reasons why she had not been in school, an accounting for plaintiff's absence on the two occasions when it was charged she had deserted her child. As a part of their testimony, the witnesses whom the welfare worker had quoted in her questions to the plaintiff testified to facts which were not in accord with those included in the statements attributed to them.

In the examination of the welfare worker, in chief, it was recognized that she could not give hearsay testimony respecting the conduct of the plaintiff or conditions under which the child was taken to the Childrens' Home but she was permitted to state what purportedly the landlord, the landlady, the roomer and the plaintiff's husband had told her respecting the misconduct of the plaintiff, upon the theory that it was admissible inasmuch as she interrogated the plaintiff to determine if the statements which she had heard were true.

After the plaintiff had rested in her defense, the defendant then offered testimony of the welfare worker as upon rebuttal in which she was permitted generally to state what had been told to her by the various witnesses to whom she had talked. The trial judge found for the defendant and the judgment entry recites:

"that the circumstances affecting the welfare of the minor child, * * *, have become materially changed since **February 20, 1946,** and that it is for the best interest of the minor child that its custody be changed, for which reason the motion of the defendant is hereby sustained." (Emphasis ours.)

In a written opinion, the trial judge set forth separate findings of fact upon which the order was predicated. We will discuss the findings later.

Appellant assigns nine grounds of error, seven of which relate to the introduction of evidence on behalf of appellee, two of which relate to the reception of Exhibits A and B, A, the affidavit of the Attendance Officer and B, the certificate of the Clerk of Courts and that the decision on the motion is contrary to law.

At the outset we observe in the judgment entry an adjudication upon a material issue which would require the determination that the order is contrary to law. The part of the entry to which we refer reads:

"finds from a preponderance of the evidence that the circumstances affecting the welfare of the minor child have become materially changed since February 20, 1946, * * *."

The last order respecting the custody of the child was made of date February 20, 1948 and the test in this proceeding was whether there had been changed circumstances from that date until the date of the filing of the present motion. Second syllabus, **Dailey v. Dailey, 146 Oh St 93.**

The first question raised by appellant relates to the admission of evidence of defendant's Exhibits A and B. Assignments of error A. and B. General exceptions were noted to the admission of these exhibits. In support of the action of the trial judge we are cited to §11523 GC which provides in part that:

"An affidavit may be used * * * upon a motion and in any other case permitted by law."

The statute is general, the result of which would leave to the discretion of the trial judge determination whether it was appropriate to permit the reception of an affidavit. We find no abuse of discretion. However, we do not believe that Exhibit A should have been received for the reason that it does not disclose that the affiant was the custodian of the attendance records; that it was his duty to make them; that he was in the employ of the Warren City School as Attendance Officer when the records were made. However, the admission of this testimony could not have been prejudicial because plaintiff admitted that the child was absent from school for about the same period of time as covered in the affidavit. On the question of the admissibility of affidavits in such matters we quote from **State v. Budd, 65 Oh St 1,** beginning on **P. 5,** as follows:

"The legislature had the common knowledge that the general and most satisfactory mode of presenting evidence, not documentary, is by the testimony of witnesses who appear in court so that an opportunity is afforded for cross-examination, and some helpful inferences may be drawn from the appearance and manner of the witness; that a less satisfactory mode of presenting the testimony of witnesses is by deposition where there is opportunity for cross-examination, although the witnesses do not appear in court, and that the least satisfactory mode of presenting such testimony is by affidavit where there is neither the appearances of the witnesses nor an oppor-

tunity for cross-examination. These less satisfactory methods of presenting evidence are specially provided for to meet considerations of convenience or necessity. While the legislature may have required affidavits as the predicate of actions to present evidence which shall enter upon the record, and may have permitted their use upon hearings of this character in view of exigencies which may require immediate judicial action, it is not to be presumed that there was an intention to compel a resort to the least satisfactory and reliable of all modes of presenting evidence.".

Exhibit B is a certificate of the Clerk of the Warren Municipal Court which, if authorized and in conformity to the requirements of such a certificate, is admissible.

A Clerk of Court whose duty it is to record the proceedings the subject of the certificate has ordinarily implied authority to make certificate of such proceedings. But to be admissible it must contain facts and not conclusions involving the exercise of discretion or opinion. 32 C. J. S. 478. Upon an examination of the certificate we are in doubt if it sets out an exact copy of the docket or record from which it purports to be taken. We cannot from the record say that it was prejudicial error to accept this certificate when tendered. That part of the certificate relating to an arrest and conviction of plaintiff's husband could have been stricken for the reason that it appears that he was not a member of the household after that date.

Assignment of error C relates to certain questions at pages 35 and 36 of the record. Some of the answers were objectionable but there was no motion to strike. The last question and answer in the examination in chief was improper but probably not prejudicial. This question asked the witness if she had formed an opinion from what she had been told.

Assignment D relates to the admission of evidence to the effect that defendant received a letter from plaintiff with the return card on the envelope, "Anna Cononico." The daughter of plaintiff had a child by Cononico who afterwards married her. Upon inquiry by the Court as to the purpose of the testimony, counsel for defendant said:

"The purpose of it is, Your Honor, that at that time it will be the testimony that the present Mrs. Brackett was living with Cononico who is now married to the daughter, Louise, and by whom he had an illegitimate child which fact was not, of course, in existence at the time of the last motion."

There was not one syllable of evidence to support the statement of counsel that the testimony would develop that Mrs. Brackett at any time lived with Cononico. There was no attempt to first produce the envelope with the purported

return card on it. There was no showing that it was missing. The testimony being of such slight probative effect was not in itself, in probability, prejudicial but the statement of counsel in view of the fact that there was no evidence forthcoming to support it was highly prejudicial. Finally it appeared that the letter had been received before the hearing to modify in 1948. Counsel for plaintiff objected to all of this testimony as it developed insisting that the time be fixed. This should have been done. The date when fixed made the testimony inadmissible but there was no motion to strike and technically no error in its admission.

E is directed to the reception of evidence of defendant at pages 65 and 66 of the record. It was in the discretion of the trial court to admit this testimony.

F. This assignment is directed to testimony of defendant at pages 84 and 85 of the record, practically all of which was hearsay and clearly incompetent but we find no objection to the testimony on that ground.

G relates to the admission of evidence of defendant explaining why he had entered a plea of guilty to a charge that he had committed an assault and battery upon the child when she was two and one-half years old. His explanation was that although he had so plead he was not guilty but had entered the plea to get away from his home and the plaintiff.

A plea of guilty entered in a criminal case may be accepted as an admission against interest but it is not conclusive against the defendant in a civil action and may be controverted. **Clark, et al v. Irwin, 9 Ohio 131.** Hendricks v. Fowler, 16 O. C. C. 597.

H relates to the introduction of evidence on page 151 of the bill. This related to answer of the witness, the plaintiff, that the daughter, who married Cononico, had been going with him. It was moved that it be stricken. The motion was properly overruled. All of this testimony respecting the birth of a child to a daughter of the plaintiff, of whom the defendant was the adopter father, had no probative effect on the question of the fitness of the mother to have the child or of any neglect toward her by the mother. There is no showing whatever that the daughter was in the home of the plaintiff when the baby was conceived or born, it is otherwise, and it is difficult to see any substantial relation between this incident and the fitness of the mother to have the custody of her child.

I, That the order of the Court sustaining the motion of defendant to change the custody of the child is contrary to law. As we have before indicated the judgment entry in itself is contrary to law because the basis therefor, as stated therein, will not support the order.

This assignment, as it relates to the evidence, requires consideration of the status of the record upon which the trial judge resolved the evidence for the defendant and against the plaintiff. It should be noted that the burden of proof was upon the defendant to establish one or more of the grounds of his motion.

We have heretofore noted the extent to which the welfare worker was permitted to inject what she had been told by several witnesses upon the theory that she had directed the attention of the plaintiff to these statements.

Let us examine the competent testimony in the light of the specific grounds of the motion which are that since the order of 1948:

(1) The plaintiff, * * *, has repeatedly deserted the minor child. Once from January 14 to January 18, 1952.

(2) The plaintiff again deserted said child in February 1952 as a result of which neglect and desertion the Juvenile Court of Trumbull County, Ohio, has awarded the temporary custody of said child to the Child Welfare Board of Trumbull County, ·Ohio.

(3) The plaintiff has deserted the minor child when she was ill, had contributed to the delinquency of said child by failing to keep her in school and permitting her to become a truant.

(4) Plaintiff has neglected the child in other respects and has conducted herself in the home in such a manner as to tend to cause the child to become a delinquent child.

The first two of the grounds of the motion are specific charges of desertion on the date set out. The second ascribes the commitment of the child to the Welfare Board as a result of these desertions.

Although a great part of defendant's testimony is that of Miss Puncsak, the welfare worker, there is not a syllable of competent evidence that the child was ever legally committed to the Welfare Board, or to the Childrens' Home, or that any proceedings whatever had been begun to so commit her. True, it is commonly conceded that Miss Puncsak removed the child from its mother's home to the Childrens' Home but by what right the child was so placed does not appear. The hearing took on an aspect of justification of the action of Miss Puncsak which was of little or no moment on material issues on the motion.

The third and fourth grounds of the motion again charge that by desertion and neglect of the child in the home plaintiff contributed to, and tended to contribute to, the delinquency of the child by causing her to be a truant from school. It is

basic that before there can be a contributing to delinquency there must be a delinquency. **Peefer v. State, 42 Oh Ap 276.**

Of the four grounds constituting delinquency §1639-2 GC, the only one that could have any application here is the 3rd, "Who is a habitual truant from * * * school." It cannot be asserted that the minor was a truant from school. The word "truant" connotes volition. Before the child could have been a truant she must have willfully absented herself from school. There is no support whatever for the 3rd and 4th grounds if all of the testimony, competent and incompetent, be given full weight against the plaintiff.

The only possible sources from which any support for the first and second grounds of the motion respecting the desertion of the child by plaintiff is from the testimony of Miss Puncsak, the welfare worker. She was first called, in chief, by the defendant. She had visited the home of plaintiff on the two days set out in these grounds of the motion, viz: January 18, 1952 and February 25, 1952, she also called on the 21st of January. The mother was at home on January 21st only. On January 18, the child was at home as was a Frank Shrock, a roomer. The home was a five room basement apartment, one of three apartments. The landlord and landlady lived in the ground floor apartment immediately above plaintiff's apartment. All of the physical appointments in the home were approved by Miss Puncsak. The child was well dressed, had ample clothing and food. It appeared that she had a cold and slight fever. There was nothing in the personal observations of Miss Puncsak indicating any neglect of the child. The witness testified that she had conversations with the roomer, the landlord and the landlady on some of these visits but on no one of these occasions was the plaintiff present. When the witness was interrogated concerning these conversations, the trial judge recognized that they were wholly incompetent but counsel thereafter ingeniously framed his questions to include all of the purported hearsay statements and inquired of the plaintiff if these statements which had been made to the witness were true. In all instances, as to any matter material to the charges against her, plaintiff made denial of their truth. The court would have been well within his rights, and it would have been only fair to the plaintiff, had he refused to accept this testimony and counsel, if he knew what the answers would be, should not have propounded such questions. This testimony was admissible, if at all, insofar as it elicited admissions against interest. As there were no such admissions the testimony was entirely without probative effect.

But this was not the end of this type of testimony. The

plaintiff offered the testimony of the landlord, the landlady and plaintiff's husband all of whom pronounced her an exceptionally fine mother, stated that the child was well cared for at all times, had her own bedroom at her mother's home and another with the landlady who, by arrangement with the mother, took care of the child whenever the mother was absent from her home. Frank Shrock did not testify and it appeared that he had left the home of plaintiff before the child was taken away. Thus, the statements attributed to him by Miss Puncsak in her testimony, in chief, were left to stand as admitted.

There was no foundation laid by the defendant for the impeachment of any of these witnesses. That such foundation must be laid as a predicate for impeaching testimony is well recognized in Ohio. **Kunkel v. Cincinnati St. Ry. Co., 82 Oh Ap 341.**

Notwithstanding the failure of defendant to lay any foundation for impeaching testimony, defendant at the conclusion of plaintiff's case again called Miss Puncsak to the stand for the purpose, as stated, of rebuttal and she was permitted to fully restate what the foregoing witnesses had said to her in the absence of plaintiff when she called at plaintiff's home and when defendant's husband called at the office of the witness. This testimony was admissible neither by way of impeachment nor as substantive proof.

We examine some of the authorities touching the reception of such testimony as we have recited.

"The rule is almost universally recognized that evidence of extra-judicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and is not competent as substantive evidence of facts to which such statements relate, * * *.

"The reason supporting the rule is that if such statements were taken as proof of the facts stated, the testimony would be hearsay." 58 Am. Jur. 421.

"When it is made to appear to the Court that the purpose or the effect of offering impeaching testimony is or will be to bring incompetent evidence to the knowledge of the jury, it is the duty of the court to require that such impeaching testimony be confined to a denial or an affirmance of a question or questions for which a foundation has been laid and which do not include incompetent evidence." **4th syl., Weaver v. State, 120 Oh St 97.**

Judge Robinson, the writer of the opinion in this case, after discussing a situation somewhat analogous to ours, said page 108:

"* * *, and, aside from that, even though the foundation had been laid at the rooming house, the right to impeach extended only to the remark which the witness testified she made or denied that she made."

In **Brown v. State, 10 Abs 582,** Judge Lemert discussing the limits of impeaching testimony says:

"It is a well settled rule that a witness may be impeached as to statements made material to the issue, which were made at a previous time and materially differ from a statement made at the trial of the case. * * *. No witness can be allowed to testify verbally as to what another said not in the presence of the defendant, not even to impeach, so when it is justifiable to allow a written statement so made to be used, first, for the impeachment of the witness about something said out of the defendant's presence and secondly, to permit the statement to be introduced, to go to the jury, to be a silent witness against the defendant, we believe to be prejudicial to the right of defendant."

Facts not admissible in chief cannot be introduced indirectly under the guise of impeachment. **Simpson v. Newinger, 28 Oh Ap 133.**

We recognize that a trial judge who is hearing a case is not so limited in receiving testimony as a jury because it is presumed that he will consider only proper evidence in reaching his decision. We are satisfied, however, that unconsciously, no doubt, the trial judge permitted improper and highly prejudicial testimony to influence his order.

The findings upon which the order was entered are, in part, upon matters not responsive to or at issue by the motion, in other instances insufficient to support the order.

We briefly analyze the findings:

A. "That the child had been absent from school fifty-two and one-half days in the first year, and 13 days in the second year of school."

This conclusion is inadequate because there is no further finding that the absence was not excusable or that the plaintiff was chargeable with any neglect causing the absence from school.

B. "That the mother had left the child for three and four days at a time, to be cared for by neighbors."

No proof that any neighbor other than the landlady took care of the child at any time. The finding is inadequate to establish that the child was negligently left with the neighbors or because of any desertion by the mother, as charged in the motion, and could be reached only by resort to incompetent hearsay testimony. All of the substantive testimony, which

was not refused in any proper manner, accounts for the whereabouts of the mother on the dates involved and establishes that the child was taken care of by the landlady upon arrangements therefor made by the mother. Of course, the court had the right to disbelieve all of this exculpating testimony but this would not substitute for lack of evidence upon the part of the defendant.

C. "That the mother drinks alcoholic beverages to excess and becomes intoxicated."

This finding does not respond to any of the grounds of the motion. It could only be germane upon the fitness of the mother to have the custody of her child, if, and when, some ground of the motion was established. Certainly the act of the mother in drinking was misconduct which we would not condone. But, unless and until it was coupled up with neglect or desertion of the child by the mother it would be entirely inadequate. There is no competent testimony tending to establish any neglect of the child because the mother drank. The finding conforms to the gist of the incompetent testimony.

D. "That the mother had an unmarried male person living in the home with her and the child during the absence of the mother's present husband."

This does not conform to any of the charges in the motion. It does not establish any wrong doing on the part of the mother. Such further finding is essential to any inference of improper home surroundings for the child. If it is intended by the language "living in the home with her" to imply improperly living in the home with her, such determination can be made only by consideration of incompetent and inadmissible testimony. If any credence be accorded the plaintiff's witnesses, including her husband, the presence of the roomer was entirely proper under the circumstances appearing.

We find no prejudicial error as assigned in A, B, C, E, F, G and H of the assignments of error.

We find assignments of error D and I established requiring a reversal of the order and a remand to the trial court for further proceedings according to law. It will be so ordered.

MILLER, J, WISEMAN, J, concur in judgment.